Harry and Blanche Goldberg, et al. [1] v. Commissioner. Goldberg v. Commissioner
Docket Nos. 3981-62 - 3985-62, 2053-63.
United States Tax Court
T.C. Memo 1964-281; 1964 Tax Ct. Memo LEXIS 58; 23 T.C.M. (CCH) 1713; T.C.M. (RIA) 64281; October 26, 1964
*58 Raymond J. Bradley and Samuel H. Levy, Packard Bldg., Philadelphia, Pa., for the petitioners in Docket Nos. 3981-62 to 3985-62, inclusive. Benjamin B. Levin, 121 S. Broad St., Philadelphia, Pa., for the petitioners in Docket No. 2053-63. Dennis C. DeBerry, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies have been determined by the Commissioner with respect to the following petitioners for the taxable years and in the amounts indicated below: Income tax
Petitioner
Docket No.
Year
deficiency
Bert and Bertha Goldberg
2053-63
1958
$ 3,273.89
1959
5,830.56
Harry and Blanche Goldberg
3981-62
1958
3,614.61
Raymond and Rochelle Goldberg
3982-62
1958
3,632.40
Jack and Bevelece Goldberg
3983-62
1958
3,632.40
Penn Maid Foods, Inc.
3984-62
3/30/58 to
6/28/58
1,631.43
6/27/59
11,128.96
Penn Maid Dairy Products, Inc.
3985-62
3/30/58 to
6/28/58
630.00
6/27/59
4,135.22
Because certain of the adjustments made by respondent in his notices of deficiency are not at issue under the pleadings, the sole remaining issues are (1) the correctness of respondent's *59 determination in Docket Nos. 3981-62 to 3985-62, inclusive, that no part of the sales price of a partnership interest purchased by the taxpayers in said dockets was in consideration of a covenant not to compete but was instead entirely paid for goodwill and the capital interest of a withdrawing partner; (2) the correctness of respondent's determination in Docket No. 2053-63 disallowing capital gains treatment on the installment basis of an amount received by petitioner on the sale by him of a partnership interest; and (3) the correctness of respondent's determination of the amount of a medical expense deduction in Docket No. 2053-63, which issue is mathematically dependent upon decision of the second issue. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners, Harry and Blanche Goldberg, husband and wife, filed a joint income tax return for the calendar year 1958 with the district director at Philadelphia, Pennsylvania, as did Raymond and Rochelle Goldberg, husband and wife, and Jack and Beverlee Goldberg, husband and wife; and Bert and Bertha Goldberg, husband and wife, for calendar years 1958 and 1959. [2]
*60 Petitioners, Harry, Raymond, Jack, and Bert were related and partners in a firm known as Penn Maid Dairy Products, a dairy products concern manufacturing sour cream but not a milk dairy, which partnership's return of income for the fiscal year ended June 28, 1958, was filed with the district director at Philadelphia, Pennsylvania. Harry is Bert's half brother and the father of Jack and Raymond. Harry and Bert each had a one-third interest in the net profits of the partnership after partners' salaries, and Raymond and Jack each had a one-sixth interest in the net profits of the partnership after partners' salaries. Petitioner partnership Penn Maid Dairy Products, which packaged and sold dairy and food items, kept its books on a variable 52 to 53 week annual period which always ended on the Saturday nearest June 30 of each year. Petitioner Penn Maid Foods, Inc., which had assumed the partnership's selling activity as explained below, kept its books on a fiscal 52 to 53 week period ending on the Saturday nearest June 30, and filed income tax returns for fiscal years ended June 28, 1958, and June 27, 1959, with the district director at Philadelphia, Pennsylvania. Petitioner *61 Penn Maid Dairy Products, Inc., which had assumed the partnership's manufacturing activity as explained below, similarly kept its books on a fiscal 52 to 53 week period ending on the Saturday nearest June 30, and filed its income tax returns for fiscal years ended June 28, 1958, and June 27, 1959, with the district director at Philadelphia, Pennsylvania. The agreement of partnership for petitioner Penn Maid Dairy Products, hereinafter referred to by name or as partnership, dated October 1, 1953, was for a term of 5 years expiring on 90-day notice, June 30, 1958, or year to year thereafter until such notice. The partnership agreement provided, in pertinent part, with respect to withdrawal of any of the petitioner partners that the remaining partners shall have the exclusive options to purchase the interest of the withdrawing partner measured by the capital account of such withdrawing partner plus $90,000 for each one-third interest. The agreement also provided that the withdrawing partner would not directly or indirectly carry on or engage in a similar business within certain prescribed geographical areas. No value was therein placed on the covenant not to compete. As the result *62 of dissension among the petitioner partners of Penn Maid Dairy Products, and after institution of legal proceedings by both factions, a separate agreement was negotiated over an extended period of time by the parties, July 12, 1957, whereby petitioner Bert, hereinafter referred to by name or as petitioner seller, withdrew from the partnership. This agreement provided - 1. BERT GOLDBERG does hereby sell and transfer to HARRY GOLDBERG, JACK GOLDBERG and RAYMOND GOLDBERG, all his partnership interest and goodwill incident thereto in PENN MAID DAIRY PRODUCTS, 1229 North Marshall Street, Philadelphia, Pennsylvania, as reflected in the partnership books as of May 29, 1957, which the said HARRY GOLDBERG, JACK GOLDBERG and RAYMOND GOLDBERG do hereby agree to purchase. 2. The purchase price to be paid for the said partnership interest shall be the sum of One Hundred and Ninety Thousand Dollars ($190,000.) for goodwill plus the capital interest of the said BERT GOLDBERG which has been for the purpose of this agreement adjusted to the amount of Sixty-six Thousand Dollars ($66,000.) or the total sum of Two Hundred Fifty-six Thousand Dollars ($256,000.) * * *
6. It is also agreed and *63 understood that, in addition to the above payments, upon the execution of this agreement, PENN MAID DAIRY PRODUCTS shall pay to BERT GOLDBERG the sum of Twelve Hundred Dollars ($1200) as his compensation for the month of June, 1957. * * *
14. BERT GOLDBERG does hereby covenant and agree that for a period of five (5) years from the date of this agreement, he will not directly or indirectly, by himself or as agent, commission broker, buyer, distributor, servant or employee, or as owner, partner or shareholder in any corporation, engage in and/or compete with PENN MAID DAIRY PRODUCTS in the business of manufacturing, distributing and selling dairy and food products within a radius of one hundred fifty (150) miles from the City of Philadelphia, excepting from the said restricted area the cities of New York, New York and Newark, New Jersey. On March 31, 1958, the remaining partners of Harry, Raymond, and Jack, hereinafter referred to by name or as petitioner buyers, formed Penn Maid Foods, Inc., and Penn Maid Dairy Products, Inc., two Pennsylvania corporations which respectively assumed the assets used by the partnership in selling, etc., and the assets used in manufacturing, etc. *64 , of the products previously sold and manufactured by the partnership, while the partnership itself retained ownership of the real estate and handling equipment, such as trucks, etc. Petitioner seller considered and treated the entire consideration as received for capital interest and "goodwill," reporting the same as a capital asset on an installment basis. Petitioner buyers considered and treated a large part of the consideration ($125,000) given under the agreement of sale for the partnership interest as allocable to the covenant not to compete. The partnership Penn Maid Dairy Products deducted $18,750 as the amortized amount for the 9-month period preceding the formation of the two new corporations referred to above. The unamortized portion of the considered covenant not to compete ($106,250) was allocated to the two subsequently formed corporations. The amortized deductions claimed in the years herein involved by petitioner buyers were as follows: Year
Amortization
Petitioner
ended
claimed
Harry
$ 6,250
Jack Penn Maid Dairy Products 1958 6,250
$ 18,750
Raymond (partnership)
6,250
Penn Maid Foods, Inc.
6/28/58 *
4,170
6/27/59 16,770
Penn Maid Dairy Products, Inc.
6/28/58 *
2,100
6/27/59 8,220
$ 50,010
*65 * 3-month period ended. It is stipulated that there is no dispute as to the ratio of allocation between the partnership Penn Maid Dairy Products and the two subsequently formed corporations, Penn Maid Foods, Inc., and Penn Maid Dairy Products, Inc., if it is determined any amount of the consideration paid is allocable to the covenant not to compete. The allocation in petitioners' books (partnership and corporations) of an amount of consideration paid to the covenant not to compete was not made by the parties to the agreement but later by a certified accountant hired by buyers in December 1957 who, after analysis, determined the valuation attributable to the covenant not to compete and made entries in the books with respect thereto sometime at the end of April or the beginning of May 1958. Petitioner buyers and petitioner seller did not discuss during negotiation of the agreement to buy and sell the partnership interest any specific valuation for the covenant not to compete. During such negotiations, although the parties took the position that the original partnership agreement was binding upon them as to the items of interest for which the seller was to be compensated, Bert consistently *66 maintained that he was not bound by the amount therein fixed as the price to be paid over his capital account for the reason that he claimed his withdrawal not to be voluntary but forced by the remaining partners. Ultimate Findings The written contract of sale of the partnership interest was reached at arm's length and accurately reflects the agreement of the parties. The covenant not to compete was not treated by the parties as a distinct and separate item from the sale of the partnership interest. The agreement of sale of the partnership interest correctly reflects the consideration to be paid for the separate items and no value of the consideration paid is attributable to the covenant not to compete. Opinion The seller, Bert Goldberg, here contends that no part of the sales price received by him from the buyers on his withdrawal from the partnership was paid or received in consideration of his covenant not to compete contained in the sales agreement and that, therefore, respondent erred in determining a deficiency against him based upon his installment reporting of the sales price under the capital gains provisions of the Internal Revenue Code of 1954. The buyers contend *67 that a major portion of such purchase price was paid by them in consideration of the covenant not to compete and that a smaller portion thereof was attributable to the purchase of goodwill. As has been indicated in our ultimate findings above, we find that the entire amount of such purchase price was paid for capital account and goodwill and no amount thereof was attributable to the covenant not to compete. There is no dispute here but that goodwill was a major asset of the partnership business at the time of the withdrawal of Bert therefrom, and we think it is also fairly apparent from the record that, absent a covenant not to compete upon the part of a withdrawing partner, the value of the goodwill involved in the seller's withdrawal would be greatly lessened and that the covenant not to compete is therefore ancillary to the good will. We are satisfied from the record that, although the withdrawal agreement of July 12, 1957, would not have been entered into by the buyers unless it contained the seller's covenant not to compete, neither of the parties, bargaining at arm's length over a long period of time, had ever attributed any amount as the value of such a covenant. Indeed, it *68 could well be argued that due to the existence in the original partnership agreement of the provision requiring a withdrawing partner to so covenant, such a covenant would be a part of the withdrawal agreement by implication whether or not specifically stated therein. In the negotiations leading to the withdrawal agreement the parties considered themselves bound by the original partnership agreement with respect to the items of the partnership interest of the withdrawing partner for which he was to be compensated. No amount was therein required to be paid for his covenant not to compete. Bert's position throughout the negotiations was that, although the partnership agreement was binding in the above-stated respects, he was not bound by the amounts therein provided to be paid the withdrawing partner in addition to his capital account inasmuch as his withdrawal was not voluntary but forced by the remaining partners. No value attributable to the covenant was at any time discussed by the partners either directly or indirectly during the negotiations. Only upon the recommendation of the buyers' accountant, subsequent to the seller's withdrawal and settlement of all issues between them, *69 was the question raised of allocating any amount as having been paid the seller for his covenant not to compete. The buyer's allocation of such an amount to the covenant upon their books of account was a unilateral action on their part which has no bearing on the issue before us. We sustain respondent's determination of deficiencies with respect to Docket Nos. 3981-62 to 3985-62, inclusive, and decide for the petitioner in respect to Docket No. 2053-63. Because of other adjustments made in the respective notices of deficiency and adjustment in the medical deduction in Docket No. 2053-63, Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: RAYMOND and ROCHELLE GOLDBERG, Docket No. 3982-62; JACK and BEVERLEE GOLDBERG, Docket No. 3983-62; PENN MAID FOODS, INC., Docket No. 3984-62; PENN MAID DAIRY PRODUCTS, INC., Docket No. 3985-62; and BERT and BERTHA GOLDBERG, Docket No. 2053-63.↩
2. The wives are made petitioners in that joint returns were filed; all subsequent references will be to the husband petitioners only.↩